# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
# CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

1. SEE NOTICE ON REVERSE 2. PLEASE TYPE OR PRINT 3. STAPLE ALL ADDITIONAL PAGES

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Steven E. Frischling<br>Plaintiff-Appellant<br><br>vs.<br><br>David Radford II, Albert Gosselin III, and Town of Montville,<br>Defendants-Appellees | District of Connecticut | Shea |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>July 8, 2026 | District Court Docket No.:<br>3:24-cv-198 |
| | Date the Notice of Appeal was Filed:<br>August 6, 2026 | Is this a Cross Appeal?<br>☐ Yes ☑ No |

| | Counsel's Name: Address: Telephone No.: Fax No.: E-mail: |
|---|---|
| **Attorney(s) for Appellant(s):**<br>☑ Plaintiff<br>☐ Defendant | Dennis M. Carnelli, Neubert, Pepe & Monteith, P.C., 195 Church St., 13th Fl., New Haven, CT 06510, dcarnelli@npmlaw.com, Tel. 203-781-2802, Fax. 203-821-2009 |
| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☑ Defendant | Abigail Willauer/Thomas Gerarde, Howd & Ludorf, LLC, 100 Great Meadow Rd., Ste. 201, Wethersfield, CT 06109, awillauer@hl-law.com tgerarde@hl-law.com<br>David C. Yale, Connecticut Office of the Attorney General, 165 Capitol Ave., Hartford, CT 06106, david.yale@ct.gov |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No |
|---|---|---|---|
| N/A | N/A | N/A | If Yes, provide the following:<br>Case Name:<br>2d Cir. Docket No.: Reporter Citation: (i.e., F.3d or Fed. App.) |

***ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

## PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☐ Diversity | ☑ Final Decision | ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☑ Other (specify): 28 U.S.C. § 1367 | ☐ Interlocutory Decision Appealable As of Right | ☐ Other (specify): ________ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B: DISTRICT COURT DISPOSITION (Check as many as apply)**

**1. Stage of Proceedings**
- [x] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [x] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [x] Damages:
  - [ ] Sought: $ ______
  - [ ] Granted: $ ______
  - [ ] Denied: $ ______
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

**PART C: NATURE OF SUIT (Check as many as apply)**

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [x] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): ______
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): ______
- [ ] Other (specify): ______

**6. General**
- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**
- [x] Yes
- [ ] No

Will appeal raise a matter of first impression?
- [ ] Yes
- [x] No

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: ______ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:
   - (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [x] No
   - (B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [x] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

Date: 08/20/2026

Signature of Counsel of Record: /s/ Dennis M. Carnelli

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $605 docketing fee to the United States District Court or the $600 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

# ADDENDUM A

## I. Description of the nature of the action.

This is a civil rights case centered on Fourth Amendment false arrest and malicious prosecution claims brought by the plaintiff-appellant, Steven Frischling ("Frischling"), a public information officer for the Chesterfield Fire Company ("CFC"), a volunteer fire department serving the town of Montville, Connecticut ("Montville"). Frischling asserts such claims against the defendant-appellee, David Radford II ("Radford"), a municipal police officer also serving Montville. In addition to state law claims asserted against Radford and the defendant-appellee Montville, Frischling asserts a failure-to-intervene claim against a Connecticut state police officer, the defendant-appellee Albert Gosselin III ("Gosselin"). For purposes of the summary judgment proceedings below, the following non-exhaustive excerpt of the undisputed facts serves to describe the nature of the action.

On March 9, 2021, Frischling was arrested pursuant to an arrest warrant procured by Radford for his alleged violation of Connecticut General Statutes § 53-341c on February 7, 2021. "A firefighter violates § 53-341c if he 'responds to a request to provide medical or other assistance to a person and, *other than in the performance of his or her duties*, knowingly . . . transmits, disseminates or otherwise makes available to a third person a photographic or digital image of such person without the consent of such person or a member of such person's immediate family.'" Exhibit 3, District Court Summary Judgment Order, 07/01/2026, ECF No. 89 ("SJ Order"), at 4 of 23 (emphasis added; quoting Conn. Gen. Stat. § 53-341c).

On February 7, 2021, Frischling and other emergency responders arrived at the scene of a motor vehicle accident. Frischling, as CFC's public information officer, took several photographs at the scene. One of those photographs "shows firefighters using an extrication tool on a vehicle . . . involved in the accident. There appears to be a person in the car, but the face is pixelated." SJ Order, at 4 of 23. Although the parties agreed that a person involved in the accident was inside the vehicle at the time that the photograph was taken, the parties disputed whether the photograph depicts the person involved the accident. *Id.* Another photograph is "set some distance away and depicts a firefighter leaning over a stretcher next to a vehicle involved in the accident, a police officer standing in front of the stretcher, and a male standing to the left of the stretcher. The stretcher is largely obscured, including where the individual's head and face would be, except for a portion showing a white sheet and restraint straps." *Id.*

Later in the day on February 7, 2021, Frischling posted those photographs, along with others taken at the accident scene, to the CFC's public information officer Facebook page with a narrative:

> This morning, shortly after 9:15AM, as the snow began to fall over the region, your Chesterfield Fire Company and Oakdale Fire Department, along with a Montville Career Firefighter and East Lyme's Flanders Fire Department, operated on the scene of a two car motor vehicle accident, with entrapment, on Route 85 at Grassy Hill Road, Sunday, February 7, 2021, in Oakdale, Montville, CT. The motor vehicle accident resulted in Route 85 being closed to traffic for more than half an hour, and three patients being transported to the hospital by the Chesterfield Fire Company, Oakdale Fire Department and Flanders Fire Department, along with an L&M Hospital Paramedic. Your Montville Volunteer Fire Companies depend on you, our neighbors, to help protect our community. You are on this planet to make a difference, to do

> something. Leave a legacy. Join your local Montville Volunteer Fire Company.
> (Images may have a digital blur to obscure portions of a patient's identity and their license plate).

SJ Order, at 3 of 23 and 5 of 23. Keith Truex, Chief of the CFC ("Chief Truex"), had previously authorized the creation of the CFC public information officer Facebook page. After Frischling made the Facebook post, someone in the Montville Police Department building "brought the post to Radford's attention." *Id.*, at 5 of 23. Radford thereafter commenced an investigation into whether Frischling violated Conn. Gen. Stat. § 53-341c.

On March 5, 2021, and as part of his investigation, Radford and another Montville police officer met with Frischling and Chief Truex. Among other things conveyed during that meeting, Chief Truex verbally stated to Radford that Frischling was performing his duties as the CFC public information officer when taking and posting the photographs on February 7, 2021. SJ Order, at 12 of 23. Chief Truex also provided Radford with a copy of a document, created and approved by the CFC prior to February 7, 2021, containing Frischling's duties as the CFC's public information officer, which included "research[ing], writ[ing], and design[ing] internal and external communications such as press releases and external reports for the public and/or agency"; "[p]hotograph[ing] and visually document[ing] incident scenes for release to the public, as well as usage for recruiting, training, and archives"; and "[m]anag[ing] and creat[ing] content for the agency's social networking sites and department website." *Id.*, at 2 of 23 and 12 of 23. Despite Conn. Gen. Stat. § 53-341c stating that a firefighter violates its provisions only

when he or she knowingly engages in the proscribed conduct "other than in the performance of his or her duties," Radford omitted the foregoing, as well as other information establishing that Frischling was engaged "in the performance of his . . . duties" as CFC's public information officer on February 7, 2021, from the application for a warrant to arrest Frischling, which warrant issued on March 9, 2021. The § 53-341c charges against Frischling were dismissed over two years later in March of 2023.

In the proceedings below, Frischling moved for summary judgment, in part, as to the issue of liability on his false arrest and malicious prosecution claims against Radford and as to Radford's defense of qualified immunity. Frischling principally asserted that Radford knowingly omitted facts from the warrant application establishing, among other things, that Frischling was performing his duties on February 7, 2021 and, had a corrected affidavit been presented to a neutral magistrate, then he or she could not have found probable cause to issue the arrest warrant. Frischling further asserted that in February 2021 the law was clearly established in this circuit, "and it should come as no surprise, that officers may not knowingly omit information likely to influence a judge or a prosecutor's probable cause determination." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 61 (2d Cir. 2020) (citing *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015) and *Richards v. City of New York*, 2003 WL 21036365, at *16 (S.D.N.Y. May 7, 2003)).

Radford, Gosselin, and Montville all moved for summary judgment—the former two on the basis of qualified immunity. Frischling opposed all such motions.

As to Radford's motion, Frischling asserted that due to, among other things, Radford's omission of facts bearing on whether Frischling was performing his duties—when viewed in the manner most favorable to Frischling—there was *at least* a disputed issue of material fact regarding whether a neutral magistrate would have found probable cause on a corrected affidavit. As to qualified immunity, Frischling contended that the law was clearly established that an officer could not knowingly omit facts that a judge or prosecutor probably would want to know from warrant applications. Frischling further contended, among other things, that regardless of § 53-341c's novelty and/or the lack of decisional law interpreting it, Radford was on fair notice that he could not omit exculpatory facts regarding an element of a crime from an application to arrest one for allegedly committing that crime—particularly where, as here, the omitted exculpatory facts were the *only* facts adduced from the investigation bearing on the element of the crime in question.

Although the district court acknowledged Radford's omissions from the warrant application, it determined that even if there was not *actual* probable cause under a corrected affidavit then Radford would still be entitled to qualified immunity. In reaching that determination, the district court reasoned that (i) the law was not clearly established as to the legal standard governing probable cause under § 53-341c; SJ Order, at 14–21; and (ii) "[f]or the same reasons that preclude finding the law was clearly established with regard to probable cause for Frischling's arrest," there was arguable probable cause. SJ Order, at 22 of 23.

## II. The result below.

The district court denied Frischling's motion for summary judgment while granting Radford's motion for summary judgment as to the false arrest and malicious prosecution claims on the basis of qualified immunity. The district court also granted Gosselin's motion for summary judgment on the failure to intervene claim (observing that such claims are contingent upon disposition of the primary claim—here, the malicious prosecution/false arrest claims against Radford). Finally, the district court dismissed Frischling's state law claims without prejudice and denied the Montville's motion for summary judgment as moot.

## III. Notice of appeal and docket sheet.

Frischling's notice of appeal is appended at Exhibit 1. The docket sheet is appended at Exhibit 2.

## IV. Copy of all relevant opinions/orders forming the basis of this appeal.

The district court's summary judgment order is appended at Exhibit 3. The district court's judgment is appended at Exhibit 4.

# ADDENDUM B

## I. Issues proposed to be raised on appeal.

1. Did the district court err in granting Radford's motion for summary judgment?

2. Did the district court err in granting Gosselin's motion for summary judgment?

3. Did the district court err in denying Frischling's motion for summary judgment?

4. Did the district court err in entering judgment and/or the order appealed from, including as to any preserved issues or errors as may become apparent upon further review of the record on appeal?

## II. Applicable standard of review for each issue.

1. For all issues, the standard of review is *de novo*. *Sacaza v. City of New York*, 169 F.4th 363, 369 (2d Cir. 2026); *Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025).

# EXHIBIT 1

# United States District Court for the District of Connecticut

Case Number: 3:24-cv-00198

Steven E. Frischling

*List the full name(s) of the plaintiff(s)/petitioners(s)*

v.

## NOTICE OF APPEAL

David Radford II, Albert Gosselin III, and Town of Montville

*List the full name(s) of the defendant(s)/respondent(s)*

Notice is hereby given that Steven, E. Frischling in the above-
**List the names of all parties who are filing an appeal*

named case, hereby appeal to the United States Court of Appeals for the Second Circuit from the

☑ final judgment entered in this action on 07/08/2026
*Date Entered*

OR

☐ order #( _____) entered in this action on ___________________ described as:
*Date Entered*

Judgment (ECF No. 90) on Memorandum of Decision/Order (ECF No. 89) granting Radford's summary judgment motion on qualified immunity grounds, granting Gosselin's summary judgment motion, denying Frischling's partial summary judgment motion, and denying the the Town of Montville's summary judgment motion as moot.

*(Provide a brief description of the decision in the order/judgment)*

08/06/2026 — *Date*

/s/ Dennis M. Carnelli (ct30050) — *Signature*

Carnelli, Dennis M.
*Name (Last, First, MI)*

Neubert, Pepe & Monteith, P.C., 195 Church Street, 13th Fl., New Haven, CT 06510
*Address* *City* *State*

(203) 781-2802 — *Telephone*

dcarnelli@npmlaw.com — *E-mail Address (if available)*

*See Rule 3(c) for permissible ways of identifying appellants. Attach additional pages as necessary.

***Note to inmate filers:*** *If you are an inmate confined in an institution and you seek the timing benefit of Fed. R. App. P. 4 (c)(1), complete Form 7 (declaration of Inmate Filing) and file that declaration along with this Notice of Appeal*.

Rev. 11-16-22

# EXHIBIT 2

APPEAL,CLOSED,EFILE,FOLDER,RAR,REFCNF,WIG

# U.S. District Court
# District of Connecticut (New Haven)
# CIVIL DOCKET FOR CASE #: 3:24-cv-00198-MPS

Frischling v. Radford et al
Assigned to: Judge Michael P Shea
Referred to: Magistrate Judge William I Garfinkel (Settlement)
Cause: 42:1983 Civil Rights Act

Date Filed: 02/13/2024
Date Terminated: 07/08/2026
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Steven E. Frischling** represented by

**Dennis Mark Carnelli**
Neubert, Pepe & Monteith, P.C.
195 Church Street
13th Floor
New Haven, CT 06510
203-821-2000
Fax: 203-821-2009
Email: dcarnelli@npmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Smeriglio**
130 Cummings Dr.
Orange, CT 06477
203-903-6309
Email: ssmeriglio@npmlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**David Radford, II** represented by

**Abigail R Willauer**
Howd & Ludorf, LLC
100 Great Meadow Road
Suite 201
Wethersfield, CT 06109
860-249-1361
Email: awillauer@hl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James G. Williams**
The Law Offices of Williams, Walsh & O'Connor, LLC
37 Broadway, 1st Floor
North Haven, CT 06473
203-234-6333
Fax: 203-234-6330

Email: jwilliams@wwolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas R. Gerarde**
Howd & Ludorf, LLC
100 Great Meadow Road
Ste 201
Wethersfield, CT 06109
860-249-1361
Fax: 860-249-7665
Email: tgerarde@hl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Bouchard**
Morrison Mahoney, LLP
1 Constitution Plaza
Ste 10th Floor
Hartford, CT 06103
860-616-7624
Fax: 860-541-4861
Email: tbouchard@morrisonmahoney.com
*TERMINATED: 05/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Albert Gosselin, III** represented by

**David C. Yale**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5406
Fax: 860-808-5387
Email: David.Yale@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Janelle Medeiros**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: janelle.medeiros@ct.gov
*TERMINATED: 10/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha C. Wong**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5450

Email: samantha.wong@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Bouchard**
(See above for address)
*TERMINATED: 05/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Town of Montville** represented by **James G. Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Roland Ouellette**
Williams Walsh & O'Connor, LLC
37 Broadway, 1st Floor
North Haven, CT 06473
203-234-6333
Email: souellette@wwolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Bouchard**
(See above for address)
*TERMINATED: 05/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/13/2024 | 1 | COMPLAINT against All Defendants ( Filing fee $405 receipt number ACTDC-7647017.), filed by Steven Frischling.(Carnelli, Dennis) (Entered: 02/13/2024) |
| 02/13/2024 | | Request for Clerk to issue summons as to Town of Montville. (Carnelli, Dennis) (Entered: 02/13/2024) |
| 02/13/2024 | 2 | Notice: Pursuant to Federal Rule of Civil Procedure 7.1, a disclosure statement must be filed with a party's first appearance, pleading, petition, motion, response, or other request addressed to the Court and must be supplemented if any required information changes during the case.<br>Signed by Clerk on 2/13/24.(Hushin, Z.) (Entered: 02/13/2024) |
| 02/13/2024 | | Judge Michael P Shea and Judge Robert A. Richardson added. (Oliver, T.) (Entered: 02/13/2024) |
| 02/13/2024 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 4/13/2024. Discovery due by 8/14/2024. Dispositive Motions due by 9/18/2024.<br>Signed by Clerk on 02/13/2024. (Peterson, M) (Entered: 02/14/2024) |
| 02/13/2024 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Michael P Shea on 02/13/2024. (Peterson, M) (Entered: 02/14/2024) |

| | | |
|---|---|---|
| 02/13/2024 | 5 | Standing Protective Order<br>Signed by Judge Michael P Shea on 02/13/2024. (Peterson, M) (Entered: 02/14/2024) |
| 02/13/2024 | 6 | Notice of Option to Consent to Magistrate Judge Jurisdiction. (Peterson, M) (Entered: 02/14/2024) |
| 02/14/2024 | 7 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 1 Complaint filed by Steven Frischling, 2 Notice re: Disclosure Statement, 3 Order on Pretrial Deadlines, 5 Standing Protective Order, 4 Electronic Filing Order, 6 Notice of Option to Consent to Magistrate Judge Jurisdiction Signed by Clerk on 02/14/2024. (Peterson, M) (Entered: 02/14/2024) |
| 02/14/2024 | 8 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Town of Montville* with answer to complaint due within *21* days. Attorney *Dennis Mark Carnelli* *Neubert, Pepe & Monteith, P.C.* *195 Church Street, 13th Floor* *New Haven, CT 06510*. (Peterson, M) (Entered: 02/14/2024) |
| 02/26/2024 | 9 | NOTICE of Appearance by Janelle Medeiros on behalf of Albert Gosselin, III (Medeiros, Janelle) (Entered: 02/26/2024) |
| 02/26/2024 | 10 | WAIVER OF SERVICE Returned Executed filed by Albert Gosselin, III. (Medeiros, Janelle) (Entered: 02/26/2024) |
| 03/03/2024 | 11 | SUMMONS Returned Executed by Steven Frischling. Town of Montville served on 2/21/2024, answer due 3/13/2024. (Carnelli, Dennis) (Entered: 03/03/2024) |
| 03/06/2024 | 12 | NOTICE of Appearance by Timothy Bouchard on behalf of Albert Gosselin, III, David Radford, II, Town of Montville (Bouchard, Timothy) (Entered: 03/06/2024) |
| 03/06/2024 | 13 | First MOTION for Extension of Time until 04/20/2024*to respond to Complaint* by Albert Gosselin, III, David Radford, II, Town of Montville. (Bouchard, Timothy) (Entered: 03/06/2024) |
| 03/07/2024 | 14 | ORDER: Defendants' consented-to motion for an extension of time until April 20, 2024 in which to respond to the Complaint (ECF No. 13 ) is granted.<br><br>Signed by Judge Michael P. Shea on 3/7/24. (Constantine, A.) (Entered: 03/07/2024) |
| 03/07/2024 | | Answer deadline updated for Albert Gosselin, III to 4/20/2024; David Radford, II to 4/20/2024; Town of Montville to 4/20/2024. (Johnson, D.) (Entered: 03/08/2024) |
| 03/20/2024 | 15 | NOTICE of Appearance by James G. Williams on behalf of David Radford, II, Town of Montville (Williams, James) (Entered: 03/20/2024) |
| 03/20/2024 | 16 | NOTICE of Appearance by Thomas R. Gerarde on behalf of David Radford, II (Gerarde, Thomas) (Entered: 03/20/2024) |
| 03/20/2024 | 17 | NOTICE of Appearance by Thomas R. Gerarde on behalf of David Radford, II *(Amended with E-Signature)* (Gerarde, Thomas) (Entered: 03/20/2024) |
| 03/20/2024 | 18 | NOTICE of Appearance by James G. Williams on behalf of Town of Montville (Williams, James) (Entered: 03/20/2024) |
| 03/22/2024 | 19 | MOTION for Extension of Time until May 15, 2024 to file a response to plaintiff's complaint by David Radford, II. (Gerarde, Thomas) (Entered: 03/22/2024) |
| 03/25/2024 | 20 | Consent MOTION for Extension of Time until May 15, 2024 plead 1 Complaint by Town of Montville. (Williams, James) (Entered: 03/25/2024) |

| | | |
|---|---|---|
| 03/26/2024 | 21 | ORDER: Defendant Radford's consented-to motion (ECF No. 19 ) for an extension of time until May 15, 2024 in which to file a response to the complaint is granted.<br><br>Signed by Judge Michael P. Shea on 3/26/24. (Constantine, A.) (Entered: 03/26/2024) |
| 03/26/2024 | | Answer deadline updated for David Radford, II to 5/15/2024. (Johnson, D.) (Entered: 03/27/2024) |
| 03/27/2024 | 22 | Consent MOTION for Extension of Time until May 15, 2024 to file a response to the plaintiff's Complaint by Albert Gosselin, III. (Medeiros, Janelle) (Entered: 03/27/2024) |
| 03/28/2024 | 23 | ORDER: The consented-to motions for extension of time until May 15, 2024 in which to file a response to the complaint (ECF Nos. 20 , 22 ) are granted.<br><br>Signed by Judge Michael P. Shea on 3/28/24. (Constantine, A.) (Entered: 03/28/2024) |
| 03/28/2024 | | Answer deadline updated for Albert Gosselin, III to 5/15/2024; Town of Montville to 5/15/2024. (Johnson, D.) (Entered: 03/28/2024) |
| 04/02/2024 | 24 | WAIVER OF SERVICE Returned Executed as to David Radford, II waiver sent on 2/15/2024, answer due 5/15/2024 filed by Steven Frischling. (Carnelli, Dennis) (Entered: 04/02/2024) |
| 04/05/2024 | 25 | First MOTION for Extension of Time until May 10, 2024 *(with consent of all Defendants) for* Filing Joint Report of Parties' Planning Conference under Rule 26(f) by Steven Frischling. (Carnelli, Dennis) (Entered: 04/05/2024) |
| 04/05/2024 | 26 | ORDER: The 25 consented-to motion for an extension of time until May 10, 2024 to file the Rule 26f report is granted.<br><br>Signed by Judge Michael P. Shea on 4/5/24. (Constantine, A.) (Entered: 04/05/2024) |
| 04/05/2024 | | Set Deadlines: Rule 26 Meeting Report due by 5/10/2024 (Johnson, D.) (Entered: 04/08/2024) |
| 04/22/2024 | 27 | NOTICE of Appearance by Sarah Smeriglio on behalf of Steven Frischling (Smeriglio, Sarah) (Entered: 04/22/2024) |
| 05/02/2024 | 28 | Joint REPORT of Rule 26(f) Planning Meeting. (Carnelli, Dennis) (Entered: 05/02/2024) |
| 05/09/2024 | 29 | ORDER: The Court adopts the attached pre-trial scheduling order.<br><br>Signed by Judge Michael P. Shea on 5/9/24.(Constantine, A.) (Entered: 05/09/2024) |
| 05/09/2024 | | Set Deadlines/Hearings:( Amended Pleadings due by 6/24/2024, Discovery due by 8/1/2025, Dispositive Motions due by 9/15/2025, Joint Status Report due by 12/6/2024, Joint Trial Brief due by 9/30/2025, Telephonic Status Conference set for 12/13/2024 at 04:30 PM in Remote Setting before Judge Michael P Shea), Answer deadline updated for Albert Gosselin, III to 7/15/2024; David Radford, II to 7/15/2024; Town of Montville to 7/15/2024. (Johnson, D.) (Entered: 05/10/2024) |
| 05/22/2024 | 30 | First MOTION for Timothy Bouchard to Withdraw as Attorney by Albert Gosselin, III, David Radford, II, Town of Montville. (Bouchard, Timothy) (Entered: 05/22/2024) |
| 05/23/2024 | 31 | ORDER: The motion to withdraw appearance filed by Attorney Bouchard (ECF No. 30 ) is granted.<br><br>Signed by Judge Michael P. Shea on 5/23/24. (Constantine, A.) (Entered: 05/23/2024) |

| | | |
|---|---|---|
| 07/12/2024 | 32 | ANSWER to 1 Complaint with Affirmative Defenses with Jury Deman by David Radford, II.(Gerarde, Thomas) (Entered: 07/12/2024) |
| 07/15/2024 | 33 | MOTION to Dismiss by Albert Gosselin, III.Responses due by 8/5/2024 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A)(Medeiros, Janelle) (Entered: 07/15/2024) |
| 07/17/2024 | 34 | MOTION for Default Entry 55(a) as to Town of Montville by Steven Frischling. (Smeriglio, Sarah) (Entered: 07/17/2024) |
| 07/18/2024 | 35 | MOTION to Dismiss by Town of Montville.Responses due by 8/8/2024 (Attachments: # 1 Memorandum in Support)(Williams, James) (Entered: 07/18/2024) |
| 07/22/2024 | 36 | ORDER: Defendants Albert Gosselin and the Town of Montville have filed Motions to Dismiss. ECF Nos. 33, 35. On or before **August 8, 2024**, Plaintiff shall either file a response to the motions or file an amended complaint in which he pleads as many facts as possible, consistent with Rule 11, to address the alleged defects discussed in Defendants' memorandum of law. The Court will not allow further amendments after **August 8, 2024**. If Plaintiff chooses to amend and if Defendants renew their motions to dismiss, Defendants may incorporate by reference any prior briefing.<br><br>Signed by Judge Michael P. Shea on 7/22/24. (Constantine, A.) (Entered: 07/22/2024) |
| 07/22/2024 | 37 | Set Deadlines as to 33 MOTION to Dismiss and 35 MOTION to Dismiss . (Responses due by 8/8/2024) or Amended Pleadings due by 8/8/2024. (Sichanh, C) (Entered: 07/23/2024) |
| 08/06/2024 | 38 | AMENDED COMPLAINT *pursuant to FRCP 15(a)(1)(B)* against All Defendants, filed by Steven Frischling. (Attachments: # 1 Exhibit 1 - Red-Lined Copy of First Amended Complaint)(Carnelli, Dennis) (Entered: 08/06/2024) |
| 08/07/2024 | 39 | ORDER: The motions to dismiss (ECF Nos. 33 , 35 ) are denied without prejudice as moot in light of the subsequently filed Amended Complaint. ECF No. 38 . The motion for default entry as to the Town of Montville 34 is denied as moot in light of the defendant's responsive pleading.<br><br>Signed by Judge Michael P. Shea on 8/7/24. (Constantine, A.) (Entered: 08/07/2024) |
| 08/16/2024 | 40 | Consent MOTION for Extension of Time until September 19, 2024 within which to file a response to plaintiff's 38 Amended Complaint by David Radford, II. (Gerarde, Thomas) (Entered: 08/16/2024) |
| 08/20/2024 | 41 | MOTION to Dismiss *PLAINTIFFS AMENDED COMPLAINT* by Albert Gosselin, III.Responses due by 9/10/2024 (Attachments: # 1 Memorandum in Support)(Medeiros, Janelle) (Entered: 08/20/2024) |
| 08/20/2024 | 42 | ANSWER to 38 Amended Complaint with Affirmative Defenses. by David Radford, II. (Gerarde, Thomas) (Entered: 08/20/2024) |
| 08/23/2024 | 43 | ORDER: Defendant Radford's consented-to motion (ECF No. 40 ) for an extension of time until September 19, 2024 in which to respond to the complaint is granted.<br><br>Signed by Judge Michael P. Shea on 8/23/24. (Constantine, A.) (Entered: 08/23/2024) |
| 08/23/2024 | | Answer deadline updated for David Radford, II to 9/19/2024. (Sichanh, C) (Entered: 08/26/2024) |
| 09/05/2024 | 44 | Consent MOTION for Extension of Time to File Response/Reply as to 41 MOTION to Dismiss *PLAINTIFFS AMENDED COMPLAINT* until October 1, 2024 by Steven E. Frischling. (Carnelli, Dennis) (Entered: 09/05/2024) |

| | | |
|---|---|---|
| 09/05/2024 | 45 | ORDER: Plaintiff's consented-to motion 44 for an extension of time until October 1, 2024 in which to file a response to the motion to dismiss 41 is granted.<br><br>Signed by Judge Michael P. Shea on 9/5/24. (Constantine, A.) (Entered: 09/05/2024) |
| 09/05/2024 | 46 | Set Deadlines as to 41 MOTION to Dismiss *PLAINTIFFS AMENDED COMPLAINT*. Response due by 10/1/2024. (Sichanh, C) (Entered: 09/06/2024) |
| 10/01/2024 | 47 | First MOTION for Extension of Time until November 17, 2024 to respond to plaintiff discovery request by David Radford, II. (Gerarde, Thomas) (Entered: 10/01/2024) |
| 10/01/2024 | 48 | Memorandum in Opposition re 41 MOTION to Dismiss *PLAINTIFFS AMENDED COMPLAINT* filed by Steven E. Frischling. (Carnelli, Dennis) (Entered: 10/01/2024) |
| 10/04/2024 | 49 | ORDER: Defendant Radford's consented-to motion 47 for an extension of time until November 17, 2024 in which to respond to plaintiff's discovery requests is granted.<br><br>Signed by Judge Michael P. Shea on 10/1/24. (Constantine, A.) (Entered: 10/04/2024) |
| 10/15/2024 | 50 | REPLY to Response to 41 MOTION to Dismiss *PLAINTIFFS AMENDED COMPLAINT* filed by Albert Gosselin, III. (Medeiros, Janelle) (Entered: 10/15/2024) |
| 10/16/2024 | 51 | NOTICE of Appearance by David C. Yale on behalf of Albert Gosselin, III (Yale, David) (Entered: 10/16/2024) |
| 10/16/2024 | 52 | NOTICE of Appearance by Samantha C. Wong on behalf of Albert Gosselin, III *in addition to the appearance already on file for AAG David C. Yale* (Wong, Samantha) (Entered: 10/16/2024) |
| 10/22/2024 | 53 | MOTION for Janelle R. Medeiros, AAG to Withdraw as Attorney by Albert Gosselin, III. (Medeiros, Janelle) (Entered: 10/22/2024) |
| 10/23/2024 | 54 | ORDER: The motion 53 to withdraw filed by AAG Medeiros is granted.<br><br>Signed by Judge Michael P. Shea on 10/23/24. (Constantine, A.) (Entered: 10/23/2024) |
| 12/03/2024 | 55 | NOTICE of Appearance by Abigail R Willauer on behalf of David Radford, II (Willauer, Abigail) (Entered: 12/03/2024) |
| 12/05/2024 | 56 | Joint STATUS REPORT *per the Court's Scheduling Order, 05/09/2024, ECF No. 29* by Steven E. Frischling. (Carnelli, Dennis) (Entered: 12/05/2024) |
| 12/06/2024 | 57 | ORDER: The Court has reviewed the parties' joint status report 56 . The telephonic status conference scheduled for December 13, 2024 is cancelled.<br><br>Signed by Judge Michael P. Shea on 12/6/24. (Constantine, A.) (Entered: 12/06/2024) |
| 03/07/2025 | 58 | ORDER: For the reasons stated in the attached ruling, the motion 41 to dismiss count 1 as to Gosselin is granted.<br><br>Signed by Judge Michael P. Shea on 3/7/25. (Constantine, A.) (Entered: 03/07/2025) |
| 03/11/2025 | 59 | ORDER: The case is referred to Magistrate Judge Garfinkel for a settlement conference.<br><br>Signed by Judge Michael P. Shea on 3/11/25. (Constantine, A.) (Entered: 03/11/2025) |
| 03/11/2025 | 60 | ORDER REFERRING CASE to Magistrate Judge William I Garfinkel for Settlement Conference.<br>Signed by Judge Michael P Shea on 3/11/2025.(Sichanh, C) (Entered: 03/11/2025) |

| | | |
|---|---|---|
| 03/14/2025 | 61 | ORDER - This case has been referred to Judge Garfinkel for a settlement conference. He will hold a per-conference telephonic conference on 3/26/2025 at 10:00 AM. A date for the settlement conference will be set during the telephone call. As the Court requires parties or their representatives with settlement authority to attend the settlement conference, counsel should obtain dates of unavailability from their clients over the next 90 days and have their own calendars available to aid in the scheduling. During the telephone call, counsel should be prepared to discuss what information needs to be exchanged and anything else that needs to be accomplished prior to the settlement conference for the discussions to be productive.<br>The parties will call the Conference Line: 203-684-6202; Conference ID#: 555984676# Signed by Magistrate Judge William I Garfinkel on 3/14/2025. (Imbriani, S) (Entered: 03/14/2025) |
| 03/20/2025 | 62 | ANSWER to 38 Amended Complaint with Affirmative Defenses. by Albert Gosselin, III. (Wong, Samantha) (Entered: 03/20/2025) |
| 03/26/2025 | 63 | Minute Entry for proceedings held before Magistrate Judge William I Garfinkel: Telephonic pre-settlement conference held on 3/26/2025. Total Time: 14 minutes (Santos, S) (Entered: 03/26/2025) |
| 03/27/2025 | 64 | NOTICE of Appearance by Scott Roland Ouellette on behalf of Town of Montville (Ouellette, Scott) (Entered: 03/27/2025) |
| 08/13/2025 | 65 | Sealed Offer of Compromise by Steven E. Frischling *as to David Radford II pursuant to Conn. Gen. Stat. § 52-192a*. (Carnelli, Dennis) (Entered: 08/13/2025) |
| 08/13/2025 | 66 | Sealed Offer of Compromise by Steven E. Frischling *as to Albert Gosselin III pursuant to Conn. Gen. Stat. § 52-192a*. (Carnelli, Dennis) (Entered: 08/13/2025) |
| 08/13/2025 | 67 | Sealed Offer of Compromise by Steven E. Frischling *as to the Town of Montville pursuant to Conn. Gen. Stat. § 52-192a*. (Carnelli, Dennis) (Entered: 08/13/2025) |
| 08/13/2025 | 68 | NOTICE by Steven E. Frischling re 66 Offer of Compromise (Sealed), 65 Offer of Compromise (Sealed), 67 Offer of Compromise (Sealed) (Carnelli, Dennis) (Entered: 08/13/2025) |
| 08/15/2025 | 69 | Consent MOTION for Modification of Dispositive Motion and JTM Deadlines in Pretrial Order (ECF No. 29) Order by Steven E. Frischling. (Carnelli, Dennis) (Entered: 08/15/2025) |
| 08/18/2025 | 70 | ORDER. The consented-to motion to modify scheduling order (ECF No. 69 ) is granted. Dispositive motions shall be filed by **October 17, 2025**. The JTM shall be filed by **November 3, 2025**, or 30 days from the Court's ruling on any dispositive motion, whichever is later.<br><br>Signed by Judge Michael P Shea on 08/18/2025. (Metzroth, R) (Entered: 08/18/2025) |
| 08/18/2025 | | Set Deadlines: Dispositive Motions due by 10/17/2025; Joint Trial Memorandum due by 11/3/2025 (Sichanh, C) (Entered: 08/21/2025) |
| 10/16/2025 | 71 | MOTION for Summary Judgment by Albert Gosselin, III.Responses due by 11/6/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit A-Gosselin deposition, # 4 Exhibit B-arrest warrant, # 5 Exhibit C-Frischling deposition, # 6 Exhibit D-Truex deposition, # 7 Exhibit E- 2020 police report, # 8 Exhibit F-Radford deposition)(Yale, David) (Entered: 10/16/2025) |
| 10/16/2025 | 72 | MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified* |

| | | |
|---|---|---|
| | | *immunity* by Steven E. Frischling.Responses due by 11/6/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit 1 - Criminal Docket SHeet, # 4 Exhibit 2 - Prosecutor's Report, 03/04/2021, # 5 Exhibit 3 - CFC PIO Duties, # 6 Exhibit 4 - Bowman EM Cerame 03/20/2023, # 7 Exhibit 5 - Plaintiff EM Radford 03/05/2021, # 8 Exhibit 6 - HV Jacket Photograph, # 9 Exhibit 7 - Stretcher Photograph, # 10 Exhibit 8 - Extrication Photograph, # 11 Exhibit 9 - J. Getty Statement, 3/3/2021, # 12 Exhibit 10 - Warrant Application, 3/8/2021, # 13 Exhibit 11 - Resident Trooper Agreement, # 14 Exhibit 12 - Accident Report, # 15 Exhibit 13 - CFC Details from CT SOS, # 16 Exhibit 14 - Radford EM to Montville PSC 11/20/2020, # 17 Exhibit 15 - D. Getty Statement, 07/14/2022, # 18 Exhibit 16 - ASA Bowman Transcript Excerpt, 02/24/2025, # 19 Exhibit 17 - Gosselin Transcript Excerpt, 05/20/2025, # 20 Exhibit 18 - Radford Transcript Excerpt, 07/08/2025, # 21 Exhibit 19 - Truex Transcript, 07/17/2025, # 22 Exhibit 20 - Frischling Transcript Excerpt, 07/29/2025, # 23 Exhibit 21 - Information and Cover Page, 03/09/2021, # 24 Exhibit 22 - Proposed Corrected Affidavit, # 25 Exhibit 23 - Montville PSC Minutes, 11/23/2020)(Carnelli, Dennis) (Entered: 10/16/2025) |
| 10/17/2025 | 73 | Amended Statement of Material Facts re 72 MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified immunity* filed by Steven E. Frischling. (Carnelli, Dennis) (Entered: 10/17/2025) |
| 10/17/2025 | 74 | MOTION for Summary Judgment by David Radford, II.Responses due by 11/7/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit Listing, # 4 Exhibit 1 - Arrest Warrant, # 5 Exhibit 2 - RST Contract July 2019 - June 2022, # 6 Exhibit 3 - RST Contract July 2021 - June 2023, # 7 Exhibit 4 - Depo of RST Gosselin, # 8 Exhibit 5 - Depo of Keith Truex, # 9 Exhibit 6 - Depo of Steven Frischling, # 10 Exhibit 7 - Depo of Lieutenant Radford, # 11 Exhibit 8 - PIO Duties (Depo Ex 3), # 12 Exhibit 9 - State Police Accident Information Summary, # 13 Exhibit 10 - Extrication Photograph (Depo Ex 8), # 14 Exhibit 11 - Stretcher Photograph (Depo Ex 7), # 15 Exhibit 12 - 2-7-21 PIO Facebook Post, # 16 Exhibit 13 - Jeanne Getty Statement, # 17 Exhibit 14 - Meeting Audio, # 18 Exhibit 15 - Depo of ASA Bowman, # 19 Exhibit 16 - Public Act No. 11-47 (Depo Ex 2), # 20 Exhibit 17 - Incident Report of Arrest, # 21 Exhibit 18 - Investigation Reports, Fire Union Facebook Post, # 22 Exhibit 19 - Douglas Getty Statement, # 23 Exhibit 20 - Bowman-Judge E-mail Chain (Depo Ex 13), # 24 Exhibit 21 - Proposed Image Policy, # 25 Exhibit 22 - Hadden Memorandum of Decision, # 26 Exhibit 23 - Transcript of Dismissal of Criminal Proceedings, # 27 Exhibit 24 - EF Radford to Public Safety Commission, # 28 Exhibit 25 - Public Safety Commission Meeting Minutes) (Willauer, Abigail) (Entered: 10/17/2025) |
| 10/17/2025 | 75 | NOTICE by David Radford, II re 74 MOTION for Summary Judgment *(Notice of Manual Filing)* (Willauer, Abigail) (Entered: 10/17/2025) |
| 10/17/2025 | 76 | MOTION for Summary Judgment by Town of Montville.Responses due by 11/7/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts)(Ouellette, Scott) (Entered: 10/17/2025) |
| 10/21/2025 | 77 | NOTICE: We received your manual filing referenced in the Notice of Manual Filing re 75 Notice (Other). Pursuant to our CMECF Policies and Procedures Manual, parties shall manually file with the Clerks Office the original, **plus one courtesy copy for chambers.** We have yet to receive your courtesy copy. Please forward to the Clerks Office the courtesy copy for chambers by 10/28/2025. The copy should be clearly identified as a courtesy copy. The CMECF Policies and Procedures Manual may be found on the Courts website at ctd.uscourts.gov/court-info/local-rules-and-orders. Deadline set for 10/28/2025 Signed by Clerk on 10/21/2025.(Kelsey, N) (Entered: 10/21/2025) |

| | | |
|---|---|---|
| 10/28/2025 | 78 | Consent MOTION for Extension of Time to File Response/Reply as to 71 MOTION for Summary Judgment , 76 MOTION for Summary Judgment , 74 MOTION for Summary Judgment , 72 MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified immunity* until Friday, November 21, 2025 by Steven E. Frischling. (Carnelli, Dennis) (Entered: 10/28/2025) |
| 10/31/2025 | 79 | ORDER The consented-to motion for an extension of time (ECF No. 78 ) is granted. Oppositions to the motions for summary judgment (ECF Nos. 71, 72, 74, 76) are due November 21, 2025.<br><br>Signed by Judge Michael P. Shea on 10/31/25. (Constantine, A.) (Entered: 10/31/2025) |
| 10/31/2025 | | Set Deadlines as to 71 MOTION for Summary Judgment , 72 MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified immunity*; 74 MOTION for Summary Judgment ; and 76 MOTION for Summary Judgment : Responses due by 11/21/2025 (Sichanh, C) (Entered: 11/03/2025) |
| 11/21/2025 | 80 | Memorandum in Opposition re 74 MOTION for Summary Judgment filed by Steven E. Frischling. (Attachments: # 1 Statement of Material Facts L.R. 56(a)(2) Statement, # 2 Exhibit Pl. Opposition Ex. 1, # 3 Exhibit Pl. Opposition Ex. 2, # 4 Exhibit Pl. Opposition Ex. 3, # 5 Exhibit Pl. Opposition Ex. 4)(Carnelli, Dennis) (Entered: 11/21/2025) |
| 11/21/2025 | 81 | Memorandum in Opposition re 76 MOTION for Summary Judgment filed by Steven E. Frischling. (Attachments: # 1 Statement of Material Facts L.R. 56(a)(2) Statement) (Carnelli, Dennis) (Entered: 11/21/2025) |
| 11/21/2025 | 82 | Memorandum in Opposition re 71 MOTION for Summary Judgment filed by Steven E. Frischling. (Attachments: # 1 Statement of Material Facts L.R. 56(a)(2) Statement, # 2 Exhibit Pl. Opposition Ex. 1, # 3 Exhibit Pl. Opposition Ex. 2)(Carnelli, Dennis) (Entered: 11/21/2025) |
| 11/21/2025 | 83 | Memorandum in Opposition re 72 MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified immunity* filed by David Radford, II. (Attachments: # 1 Statement of Material Facts, # 2 Exhibit 1 - Deposition Excerpt of Steven Frischling, # 3 Exhibit 2- Deposition Excerpt of RST Gosselin, # 4 Exhibit 3 - Deposition Transcript of Lt Radford, # 5 Exhibit 4 - Deposition Transcript of ASA Bowman, # 6 Exhibit 5 - Hadden Memorandum of Decision)(Willauer, Abigail) (Entered: 11/21/2025) |
| 11/25/2025 | 84 | ANSWER to 38 Amended Complaint with Affirmative Defenses. by Town of Montville. (Ouellette, Scott) (Entered: 11/25/2025) |
| 12/03/2025 | 85 | RESPONSE re 82 Memorandum in Opposition to Motion, *re 71 MSJ* filed by Albert Gosselin, III. (Yale, David) (Entered: 12/03/2025) |
| 12/05/2025 | 86 | REPLY to Response to 74 MOTION for Summary Judgment filed by David Radford, II. (Willauer, Abigail) (Entered: 12/05/2025) |
| 12/05/2025 | 87 | REPLY to Response to 76 MOTION for Summary Judgment filed by Town of Montville. (Ouellette, Scott) (Entered: 12/05/2025) |
| 12/05/2025 | 88 | REPLY to Response to 72 MOTION for Summary Judgment *in part/partial summary judgment on Plaintiff's § 1983 malicious prosecution claim against Radford and Radford's affirmative defense of qualified immunity (see ECF No. 83 for Response to which this Reply relates)* filed by Steven E. Frischling. (Carnelli, Dennis) (Entered: 12/05/2025) |

| | | |
|---|---|---|
| 07/01/2026 | 89 | ORDER: For the reasons stated in the attached ruling, Radford's motion for summary judgment (ECF No. 74 ) is granted as to the § 1983 claims of false arrest (count 1) and malicious prosecution (count 3), Frischling's motion for partial summary judgment (ECF No. 72 ) is denied, and Gosselin's motion (ECF No. 71 ) for summary judgment on the federal failure to intervene claim (count 2), the sole claim remaining against him, is granted. In light of the dismissal of the federal claims, I decline to exercise supplemental jurisdiction over Frischling's state law claims and dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction). Accordingly, the Town of Montville's motion for summary judgment (ECF No. 76 ) as to count 10, a state law claim, is denied as moot.<br><br>Signed by Judge Michael P. Shea on 7/1/2026. (AC) (Entered: 07/01/2026) |
| 07/08/2026 | 90 | JUDGMENT entered in favor of Albert Gosselin, III, David Radford, II against Steven E. Frischling.<br><br>For Appeal Forms please go to the following website:<br>http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms<br>Signed by Clerk on 7/8/2026.(cs) (Entered: 07/08/2026) |
| 07/08/2026 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey<br>(cs) (Entered: 07/08/2026) |
| 08/06/2026 | 91 | NOTICE OF APPEAL as to 90 Judgment, by Steven E. Frischling. Filing fee $ 605, receipt number ACTDC-8705915. (Carnelli, Dennis) (Entered: 08/06/2026) |
| 08/07/2026 | 92 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 91 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: One (jb) (Entered: 08/07/2026) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/20/2026 11:33:13 | | | |
| **PACER Login:** | dcarnelli | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00198-MPS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

STEVEN FRISCHLING,

*Plaintiff*,

v.

DAVID RADFORD II, ALBERT GOSSELIN III, & TOWN OF MONTVILLE,

*Defendants*.

No. 3:24cv198 (MPS)

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Steven Frischling brings this action under 42 U.S.C. § 1983 against Montville police officer David Radford, Connecticut State Police Sergeant Albert Gosselin, and the Town of Montville challenging his March 9, 2021 arrest. The complaint alleges federal and state claims of false arrest and malicious prosecution, intentional and negligent infliction of emotional distress, and negligence as to Radford; a failure to intervene claim as to Gosselin, and a claim under Conn. Gen. Stat. § 52-557n as to the Town of Montville.[1] First Am. Compl., ECF No. 38. Radford, Gosselin, and the Town each have filed a motion for summary judgment as to the counts against them, ECF Nos. 71, 74, 76. Frischling has filed a partial motion for summary judgment as to his federal claim of malicious prosecution against Radford (count 3) and Radford's affirmative defense of qualified immunity, ECF No. 72. As I explain further below, because no reported court decisions have construed the statute under which Radford arrested Frischling and because reasonable police officers could disagree as to whether there was probable cause, Radford is entitled to qualified immunity. So Radford's motion for summary judgment is granted as to the federal claims of false arrest and malicious prosecution under the Fourth Amendment, Gosselin's motion is granted

[1] Frischling indicates in his papers that he is withdrawing the abuse of process (count 6) and Conn. Gen. Stat. § 52-571k (count 11) claims as to Radford, ECF No. 80 at 2 n.1, and the state law false arrest claim (count 4) as to Gosselin. See ECF No. 82 at 1. Therefore, those claims are dismissed.

because the failure to intervene claim is predicated on the Fourth Amendment claims, and Frischling's motion is denied. I decline to exercise supplemental jurisdiction over Frischling's state law claims and dismiss those claims without prejudice; accordingly, I deny the Town of Montville's motion as moot.

## I. FACTUAL BACKGROUND

The following facts are taken from the parties' Local Rule 56(a) Statements and the attached exhibits and are undisputed unless otherwise stated.

At the time of the incident at issue, Frischling was a member of the Chesterfield Fire Company ("CFC"), a volunteer fire department serving the town of Montville, Connecticut. Am. Compl, ECF No. 38 ¶ 7. In December 2019, the CFC authorized the creation of a Public Information Officer ("PIO") position. ECF No. 83-1 ¶ 3. Frischling has served as the CFC PIO since that time. *Id.* ¶ 4. Prior to January 1, 2021, the CFC approved a set of written duties and responsibilities of the CFC PIO. *Id.* ¶ 6. Frischling drafted the CFC PIO written duties and responsibilities with Keith Truex, the Chief of the CFC. ECF No. 80-1 ¶ 10. The document states that the PIO officer is responsible for developing, coordinating, and directing public relations activities for the CFC. ECF No. 74-11. According to the document, the PIO's duties include "research[ing], writ[ing], and design[ing] internal and external communications such as press releases and external reports for the public and/or agency"; "[p]hotograph[ing] and visually document[ing] incident scenes for release to the public, as well as usage for recruiting, training, and archives"; and "[m]anag[ing] and creat[ing] content for the agency's social networking sites and department website." *Id.* ¶¶ 4, 5, 10. The document stated that "[a]ll images must meet or exceed HIPAA photographic guidelines for release and further dissemination." *Id.* ¶ 5. Chief

Truex authorized the creation of an official Facebook page for the CFC PIO ("CFC PIO Facebook Page"). ECF No. 83-1 ¶ 5.

Defendant Radford was a Lieutenant in the Montville Police Department. ECF No. 83-1 ¶ 8. As early as November 2020, Radford knew that Frischling was the CFC PIO. *Id.* ¶ 10.

*Radford's Email about Frischling*

On November 20, 2020, Radford emailed the Town of Montville Public Safety Commission regarding a November 6, 2020 Facebook post by Frischling as the CFC PIO. ECF No. 80-1 ¶ 65. The post advertised the Montville Police Department's Fill-A-Cruiser Event scheduled for November 7 and 8. ECF No. 74-27 at 3. It included a photograph of a patrol vehicle with the Montville Police Department logo and a dog wearing a police hat. ECF No. 80-1 ¶ 66; ECF No. 74-27 at 3. Radford stated in his email to the Public Safety Commission that the post depicted the Montville Police logo and the dog in a manner that misrepresented the police department because Frischling did not get consent from the department to post its logo. ECF No. 74-27 at 2. As to the picture of the dog, Radford stated that "I believe this picture was purposely chosen to mock one of my officers. There was an investigation that was recently closed involving the Chesterfield PIO and my officer. This is clearly a retaliatory act against my officer, as a result of the investigation that took place." *Id.* Radford further stated that "I am sending this email to all of you so that something will hopefully be done with the Chesterfield PIO acting as a Town agent, with many functions.…He represents the Chesterfield Fire Company, but does not … represent the Montville Police Department in any way." *Id.*

*The Photos Taken at the Accident Scene*

On the morning of February 7, 2021, a motor vehicle accident occurred in Montville. ECF No. 83-1 ¶ 11. There was a collision between two vehicles. ECF No. 74-12. Members of the

CFC, including Chief Truex, and police officers from the Montville Police department, responded to the scene. ECF No. 83-1 ¶ 13. Frischling also arrived at the scene. He wore a high-visibility jacket with the words "Chesterfield Fire PIO" emblazoned on the back and was equipped with two cameras for taking photographs. *Id.* ¶ 14. As the CFC PIO, Frischling took several photographs of the accident, two of which are at issue. *Id.* ¶ 15. The first photograph shows firefighters using an extrication tool on a vehicle, a 2006 Toyota Camry, that was involved in the accident. *Id.* ("Extrication Photograph"); ECF No. 80-1 ¶ 17; ECF No. 74-13 (Photo). There appears to be a person in the car but the face is pixelated, ECF No. 74-13.[2] The parties agree that Lawrence Haney, the driver of the Camry, was inside the vehicle at the time the Extrication Photograph was taken, ECF No. 80-1 ¶ 14, but dispute whether the photo depicts Lawrence Haney. *Id.* ¶¶ 14, 17. Frischling seems to suggest that the head belongs to a firefighter who entered the vehicle to assist and who covered the driver with a sheet. ECF No. 74-9, Frischling Dep. at 8, 18.

The second photograph at issue is set some distance away and depicts a firefighter leaning over a stretcher next to a vehicle involved in the accident, a police officer standing in front of the stretcher, and a male standing to the left of the stretcher. ("Stretcher Photograph"). ECF No. 74-14 (photo). The stretcher is largely obscured, including where the individual's head and face would be, except for a portion showing a white sheet and restraint straps. *Id.*

*The Facebook Post*

Later in the day on February 7, 2021, Frischling posted to the CFC PIO Facebook Page a narrative concerning the accident and four photographs from the accident, including the

[2] Frischling's Local Rule 56(a)(2) Statement disputes that the photo depicts an individual in the car, ECF No. 80-1 at ¶ 17. But in his deposition, Frischling testified "[t]here is a person under a blanket … and a head, while pixilated [sic], that is not of a victim …." ECF No. 74-9 at 6.

Extrication Photograph and the Stretcher Photograph. ECF No. 83-1 ¶ 16. The photos were posted with the following statement:

> This morning, shortly after 9:15AM, as the snow began to fall over the region, your Chesterfield Fire Company and Oakdale Fire Department, along with a Montville Career Firefighter and East Lyme's Flanders Fire Department, operated on the scene of a two car motor vehicle accident, with entrapment, on Route 85 at Grassy Hill Road, Sunday, February 7, 2021, in Oakdale, Montville, CT.
>
> The motor vehicle accident resulted in Route 85 being closed to traffic for more than half an hour, and three patients being transported to the hospital by the Chesterfield Fire Company, Oakdale Fire Department and Flanders Fire Department, along with an L&M Hospital Paramedic.
>
> Your Montville Volunteer Fire Companies depend on you, our neighbors, to help protect our community. You are on this planet to make a difference, to do something. Leave a legacy. Join your local Montville Volunteer Fire Company.
>
> (Images may have a digital blur to obscure portions of a patient's identity and their license plate).

ECF No. 74-15.

*The Investigation*

After Frischling made the post, one or more persons in the Montville Police Department building brought the post to Radford's attention. ECF No. 83-1 ¶ 17. Thereafter, Radford commenced an investigation into whether Frischling violated Conn. Gen. Stat. § 53-341c. *Id.* ¶ 18. Section 53-341c is titled "Unauthorized taking or transmission by first responders of images of crime or accident victims" and provides:

> Any … firefighter, as [that term is] defined in section 53a-3[[3]], … who responds to a request to provide medical or other assistance to a person and, other than in the performance of his or her duties, knowingly (1) takes a photographic or digital image of such person without the consent of such person or a member of such person's immediate family; or (2) transmits, disseminates or otherwise makes available to a third person a photographic or digital image of such person without the consent of such person or a member of such person's immediate family, shall

[3] Section 53a-3 defines "Firefighter" as "any agent of a municipality whose duty it is to protect life and property therein as a member of a duly constituted fire department whether professional or volunteer."

be fined not more than two thousand dollars or imprisoned not more than one year, or both.

Radford had not been involved in a case involving this statute before. ECF No. 80-1 ¶ 20. He went to Lawrence Haney's residence "to see if the social media post had been approved to be posted." ECF No. 74-10, Radford Dep. at 12. Lawrence Haney was not at home. *Id.* at 13. Radford spoke with Haney's daughter, Jeanne Getty, to inquire if Mr. Haney or the family had approved Frischling's Facebook post depicting the accident. ECF No. 80-1 ¶ 21. Ms. Getty indicated that she was her father's power of attorney and that the family would not have given permission to have their information posted. *Id.* Radford did not show her the Extrication Photograph. ECF No. 83-1 ¶ 19. Jeanne Getty provided a sworn statement to Radford stating that Mr. Haney did not give anyone permission to post his picture on Facebook or social media and that no one involved in the crash had known that the crash scene was posted on Facebook. ECF No. 80-1 ¶ 22.

Radford attempted to contact the other driver involved in the accident before drafting the arrest warrant but does not recall making contact. *Id.* ¶ 24.

On March 5, 2021, Radford and another officer met with Frischling and Chief Truex about the accident and the Facebook Post. *Id.* ¶ 25. This was the first time Radford and Frischling had ever spoken in person. *Id.* ¶ 27. Radford asked Frischling whether he had obtained permission from the crash victims before posting pictures online. ECF No. 74-17. Frischling responded that any faces were pixelated per departmental policy. *Id.* Chief Truex provided Radford with a copy of the CFC PIO duties and told him that Frischling was performing his duties as CFC PIO when he took and posted the four photographs. ECF No. 83-1 ¶ 20. After the meeting, Frischling sent Radford an email bringing his attention to the "other than in the performance of his or her duties" language of Conn. Gen. Stat. § 53-341c. *Id.* ¶ 21.

*Arrest Warrant*

On March 8, 2021, Radford applied for an arrest warrant to arrest Frischling on two counts of violating Conn. Gen. Stat. § 53-341c. ECF No. 74-4. These counts related to the dissemination of the Extrication Photograph and the Stretcher Photograph via the Facebook post. ECF No. 80-1 ¶ 35.

In pertinent part the warrant application states:

> 2) That, on 02/07/21 at 0916 hours there was a motor vehicle accident at the intersection of Route 85 and Grassy Hill Road, in the Oakdale section of Montville. The fire departments were started due to the reports of injuries. While the different fire department personnel were on scene, it was determined that the driver of a Gray 2006 Toyota Camry needed to be extricated from the vehicle. This entailed using an extricating tool to force the driver's door open, to treat and transport the operator/victim.
>
> 3) That, it was brought to my attention that later that day (02/07/21) the Chesterfield Fire Co. PIO, Steven Frischling (the accused), posted on Facebook a narrative and photos of the crash. The accused is an active first responder with the Chesterfield Fire Co., located at 1606 Hartford New London Tpke, Oakdale, CT. The accused identifies himself as the Chesterfield PIO and responds to scenes as a first responder to take pictures of the scene and post them on social media platforms; specifically, Facebook. The accused will also identify as fire police and occasionally direct traffic at a scene.
>
> 4) That, the accused's post had a narrative of the incident and included several pictures of the scene. The pictures of the scene included occupants of the vehicles and in one particular picture, the victim was still in the vehicle being extricated. This picture showed fire personnel using the tool to open the victim's door and it depicted the victim still in the car. A second photo also depicted a male standing next to an individual being strapped onto a stretcher for transport. This picture only depicts a silhouette of the body of the individual under a blanket on the stretcher. After posting the narrative and pictures, the accused then put in parenthesis "Images may have a digital blur to obscure portions of a patient's identity and their license plate". Addressing that he posted the victim's photos without consent.
>
> 5) That on 03/03/21 I contacted and met with the witness and obtained a signed sworn statement regarding the victim's crash. The witness is a Power of Attorney for the victim and states that the victim was still in a rehab facility. The witness also stated that the victim would not want his information posted on social media. The witness stated that the victim did not give anyone permission to post his picture on Facebook or any other social media….

ECF No. 74-4.

The warrant application further stated that Radford had met with Frischling and Chief Truex and that Radford

> asked the accused when he takes scene photos, specifically crash scene ones, does he obtain permission from victims in vehicles to post them on social media platforms. The accused stated that for one, permission in the right of the public view is not required and any face is blurred. I then asked the accused if that was a yes or no answer to my question. The accused then stated, 'There is no requirement to obtain any permission from any victim in the right of the public view in any photo as per policy, the faces are pix[e]lated.' 'They are unidentifiable.'

ECF No. 74-4 ¶ 7. Radford then "asked the accused what he meant by 'As per policy.' [Frischling] stated that they have an internal policy that anything that would directly show a victim's face would be blurred or typically pix[e]lated." *Id.* ¶ 9. Radford further averred that he reviewed the police video of the incident and "confirmed that the accused was on the scene as both a first responder and the PIO. The accused was clearly wearing a high visibility jacket with Chesterfield Fire Company on the back." *Id.* ¶ 10.

Radford presented the arrest warrant application to Officer Albert Gosselin, the acting Resident State Trooper in the Town of Montville. ECF No. 80-1 ¶¶ 3, 36. Officer Gosselin signed the jurat.[4] ECF No. 74-4 at 4. Gosselin was not involved in the underlying investigation. ECF No. 80-1 ¶ 38.

On March 8, 2021, Assistant State's Attorney Sarah Bowman reviewed and signed the arrest warrant. ECF No. 80-1 ¶ 40. This was the first case she had involving § 53-341c. *Id.* ¶ 41. On March 9, 2021, a Connecticut Superior Court judge signed the arrest warrant. *Id.* ¶ 49. Frischling was arrested later that day. *Id.* ¶ 50.

---

[4] "'Jurat' means a notarial act in which a notary public certifies that a signatory, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made, in the notary public's presence, a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed document." Conn. Gen. Stat. § 3–94a(3).

*Frischling Points to an Alleged Violation*

Thereafter, on March 10, 2021, Frischling contacted Gosselin regarding photographs posted on the Montville Fire Fighters Association IAFF Local 3386 Facebook page that Frischling felt violated Conn. Gen. Stat. § 53-341c. ECF No. 80-1 ¶ 51. Officer Noyes of the Montville Police Department interviewed the parties depicted in the photographs. *Id.* ¶ 52. According to her report, she closed the investigation "due to a lack of probable cause and having no complaint from the involved parties." ECF No. 74-21 at 11.

On July 14, 2022, Radford met with Lawrence Haney's daughter, Jeanne Getty, and her husband, Douglas. ECF No. 80-1 ¶ 54. The Gettys told Radford that they were able to identify the vehicle in the Extrication Photo as Lawrence Haney's vehicle. *Id.* They further stated that they could identify Lawrence Haney sitting in the driver's seat. *Id.* Douglas Getty provided a written statement that his father-in-law was involved in the accident and did not give his permission for photos to be published. ECF No. 74-22.

In March 2023, the charges were dismissed. ECF No. 80-1 ¶ 64. This action followed.

## II. LEGAL STANDARD

"Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute of material fact exists for summary judgment purposes where the

evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan*, 737 F.3d at 843. If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## III. DISCUSSION

### A. False Arrest and Malicious Prosecution Claims under § 1983

Frischling alleges that Radford arrested and prosecuted him without probable cause in violation of the Fourth Amendment. ECF No. 38, Am. Compl., counts 1 and 3. Specifically, he alleges that Radford made false and misleading statements and omitted material information from the warrant application critical to a finding of probable cause. ECF No. 38 ¶¶ 22, 23. Radford moves for summary judgment on the grounds that even if the affidavit was corrected to eliminate the allegedly false and misleading statements and to include the allegedly omitted information, there would be probable cause, and even if not, he nonetheless is entitled to qualified immunity. ECF No. 74. Frischling opposes the motion, ECF No. 80, and in turn moves for summary judgment on the malicious prosecution claim and Radford's qualified immunity defense. ECF No. 72.

"The existence of probable cause is a complete defense to claims of false arrest and malicious prosecution." *Jimenez v. Bogle*, No. 24-323, 2025 WL 883211, at *1 (2d Cir. Mar. 21, 2025). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal

rules.... While probable cause requires more than a mere suspicion of wrongdoing, ... its focus is on probabilities, not hard certainties.... In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks and citations omitted). "In evaluating whether probable cause exists, the court must look at the 'totality of the circumstances'" and "must base its assessment on objective facts and not an officer's subjective intent." *Friend v. Gasparino*, 743 F. Supp. 3d 415, 428 (D. Conn. 2024) (citations omitted).

Here, Frischling was arrested pursuant to a warrant signed by a Connecticut judge, creating a presumption that his arrest was supported by probable cause. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). But as stated above, Frischling argues that the affidavit submitted by Radford in support of the arrest warrant contained false statements and material omissions that, if corrected, would vitiate probable cause.

"In so arguing, a plaintiff must show that the officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Kaskel v. Compagnone*, 664 F. App'x 109, 110 (2d Cir. 2016) (summary order) (internal quotation marks and citation omitted). To evaluate such a claim, the Court "put[s] aside allegedly false material, suppl[ies] any omitted information, and then determin[es] whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." *Id.* at 110–111. To correct the affidavit, the Court must "examine all of the information the officers possessed when they applied for the arrest warrant." *Escalera*, 361 F.3d at 744.

*Omitted Information*

A firefighter violates § 53-341c if he "responds to a request to provide medical or other assistance to a person and, other than in the performance of his or her duties, knowingly … transmits, disseminates or otherwise makes available to a third person a photographic or digital image of such person without the consent of such person or a member of such person's immediate family."

Frischling first argues that Radford omitted information as to whether Frischling's dissemination of an image was done "other than in the performance of" his duties. Specifically, Frischling asserts that Radford omitted, among other things, (1) information as to Frischling's duties as a PIO, even though Radford was aware that the duties of the CFC PIO included photographing incident scenes for release to the public and creating content for the agency's social networking sites because Chief Truex had provided him with a written description of those duties; (2) Chief Truex's statement that Frischling was performing his duties as the CFC PIO when he took and posted the photographs; (3) that Frischling made the post to the CFC PIO Facebook page rather than a personal Facebook page; (4) a description of the narrative Frischling posted; and (5) that Frischling's jacket, worn at the accident scene, was emblazoned with the acronym "PIO." ECF No. 83-1 ¶ 23.

Frischling also argues that Radford omitted information bearing on whether the Extrication and Stretcher Photographs contained images "of a person" for whom "medical or other assistance" was requested. Frischling argues that Radford made misrepresentations that suggested that the photos depicted identifiable victims of the accident. He points to the statements in the warrant affidavit that the "pictures of the scene included occupants of the vehicles" and that "the victim was still in the vehicle being extricated," which implied that the photo depicted an identifiable

victim when only a portion of a person's head is visible and that image is pixelated. ECF No. 72-1 at 20; ECF No. 72-24. Frischling also argues that Radford omitted that no person had identified the victim in the Extrication Photograph before he prepared the warrant application. ECF No. 72-1 at 17.

As to the Stretcher Photograph, Frischling points to (1) the statement that the photo "depicted a silhouette of the body of the individual under a blanket", which, Frischling contends, suggests that the photo depicted a dead victim, and (2) the statement that the picture shows a "male standing next to an individual being strapped onto a stretcher for transport" when the view of the individual on the stretcher, including that individual's head and face, was largely obstructed by the firefighter and officer positioned in front. ECF Nos. 72-24 at 3; 72-1 at 18. Frischling also asserts that Radford omitted that someone "in the building" of the Montville police department "brought the FB post" to his attention, which was needed to clarify that a victim was not the individual who brought the post to Radford's attention.

Frischling argues that, thus corrected, the affidavit (1) contains no evidence that he was *not* performing his duties when he disseminated the photo and (2) negates probable cause to believe that the photographs depicted a "person" for whom "medical or other assistance" was requested. Radford disagrees and contends that there is probable cause because regardless of Frischling's PIO duties, posting on Facebook photos containing images of victims without consent violates the statute, the intent of which is to protect privacy. ECF No. 72-20, Radford Dep. at 67, 74-75, 86. I need not and do not resolve the parties' dispute about whether there was actual probable cause to arrest Frischling for violating § 53-341c under the corrected affidavit because even if there was not, Radford is entitled to qualified immunity.

**Qualified Immunity**

"Even where actual probable cause does not exist, police officers may be entitled to qualified immunity from a § 1983 false arrest claim if their actions did not violate 'clearly established' rights or if 'arguable probable cause' existed at the time of the arrest." *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022).

*Clearly Established*

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "In the case of an arrest without probable cause, the requirement of specificity means that the law defining what constitutes probable cause for the charged crime must also be clear." *Haidon v. Danaher*, No. 3:19-CV-119 (SRU), 2024 WL 3982880, at *10 (D. Conn. Aug. 29, 2024). The Supreme Court explains:

> We have stressed that the specificity of the rule [prohibiting the officer's conduct in the particular circumstances before him] is especially important in the Fourth Amendment context….Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered…. Thus, we have stressed the need to identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment…. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate.

*Wesby*, 583 U.S. at 64 (internal quotation marks and citations omitted). "Only if the specific contours of the probable cause standard are well-defined can it be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Haidon*, 2024 WL 3982880, at *10 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Radford argues that the law was not clearly established that his conduct was unlawful because the legal standard governing probable cause for the crime of § 53-341c is unsettled. Neither party offers any caselaw interpreting § 53-341c, which was enacted in 2011, and the Court's research reveals none. There is, then, no "case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment." *Wesby*, 583 U.S. at 64. Indeed, because the statute is still untested, there is no case "where an officer [was] acting under similar circumstances" at all. Courts commonly grant qualified immunity in these situations, especially when the alleged constitutional violation turns on an unsettled question of state law. *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 59-63 (2d Cir. 2003)(where Fourth Amendment unlawful entry claimed depended on unsettled question of state law concerning authority of conservators, the plaintiff could not demonstrate the violation of a clearly established right of which a reasonable officer would have known and the officers were entitled to qualified immunity); *Leise v. Christie*, 2025 WL 2462457, at *5 (2d Cir. Aug. 27, 2025)("In light of the ambiguity under Vermont law about whether an investigative report is confidential, it was reasonable for Christie and Yang to have believed that releasing the Investigative Report was lawful. Because Leise bases his substantive due process claim on the alleged violation of Vermont law, he cannot show that Christie and Yang violated a clearly established federal constitutional right*.")*; *Local 851 of Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 2004 WL 2269703, at *10 (E.D.N.Y. Sept. 30, 2004) (dismissing due process claims on qualified immunity grounds where "New York law was unresolved as to whether Local 851 had a property interest in the forfeited funds as a 'victim' under [CPLR] Article 13-A.").

Frischling points to language in *Hope v. Pelzer*, 536 U.S. 730 (2002), which held that "officials can still be on notice that their conduct violates established law even in novel factual

circumstances," that "general statements of the law are not inherently incapable of giving fair and clear warning," and that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." ECF No. 80 at 15-16 (quoting *Hope*, 536 U.S. at 740-41). More recently, however, in *Wesby*, the Court stated that qualified immunity cases not requiring a precedent involving similar circumstances would be "rare": "Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances…. But a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." 583 U.S. at 64 (citation omitted).

This is not the "rare" case in which any constitutional violation would have been "obvious" to the arresting officer. Such cases generally involve egregious facts in which it would be apparent to any reasonable official that he was violating the law. *Hope* itself was an Eighth Amendment case in which corrections officials allegedly chained an inmate to a hitching post in the sun for seven hours with only one or two water breaks and no bathroom breaks. 536 U.S. at 737. Fourth Amendment cases in this Circuit invoking the *Hope* exception likewise feature blatant or shocking scenarios. *See, e.g., Simon v. City of New York*, 893 F.3d 83 (2d Cir. 2018)(denying qualified immunity where officers with material witness warrant that authorized them to take person into custody to bring her to a 10am court hearing held person against her will for eighteen hours over two days); *Williams v. Olsen*, 638 F. Supp.3d 204, 222 (N.D.N.Y. 2022)(denying qualified immunity on excessive force claim because under plaintiff's version of events, police officers used deadly force, shooting him twice in the back from 24 feet away while he was unarmed, posed no immediate threat, and was fleeing from an unmarked sedan carrying officers who never identified

themselves); *Zarkower v. City of New York*, 461 F. Supp.3d 31, 42 (E.D.N.Y. 2020) (denying qualified immunity where plaintiff alleged that he was arrested, issued a "desk appearance ticket" that authorized his immediate release, and then returned to a cell and held for another five hours for the sole purpose of being questioned by a detective about unrelated crimes committed by other people).

This is nothing like those cases, even when all of Frischling's proposed corrections to the warrant affidavit are taken into account. First, as noted, Section 53-341c is a fifteen-year-old statute that no court has construed in a reported decision and that imposed a novel prohibition that, at least when the statute was enacted, did not exist in many other states. *See* Joint Standing Committee Hearing, 2011, Judiciary, Part 7, at 2101, Testimony of State Victim Advocate (noting that "[o]ne of the barriers in these cases has been that according to the laws of GA, NY, and CA, the [first responders] who took these photographs did not violate any law in their state.") Radford was left to figure out what this unfamiliar statute meant on his own.

Second, Radford's decision to seek an arrest under the statute comports with the statute's apparent purpose of protecting crime or accident victims from exploitation – through the taking or transmitting images of them without their consent at times of personal emergencies or tragedies – by those granted privileged access to them during such times. The statute is titled "Unauthorized taking or transmission by first responders of images of crime or accident victims," and floor statements during the debate preceding the statute's enactment confirm that its purpose was to protect the dignity of crime and accident victims. Conn. General Assembly, House Proceedings, Vol. 54, Part 14, at 4779, Remarks of Rep. Mikutel ("No one should be allowed as a first responder to abuse the privacy and the dignity of a victim. And that's what this is all about.… No one should put a victim on public exhibit."), *id.* at 4784, Remarks of Rep. E. Ritter (citing the "potential for

harm to be caused to other individuals and family through the dissemination of these pictures."). Arresting first responders who, without obtaining consent, create images of accident or crime victims and post them on Facebook is consistent with that purpose.

Third, while Frischling argues that Radford ignored or minimized the statute's exception for taking or transmitting images "in the performance of the duties" of the first responder, Radford's apparent interpretation – that "the duties" contemplated could not include taking photographs to be posted on Facebook, regardless of how a local fire or police department might define the jobs of its employees – is not "obvious[ly]" wrong. There is nothing in the legislative debates preceding enactment of the statute suggesting that legislators anticipated that a firefighter or other first responder might be tasked with publicizing an accident or crime scene on Facebook. Under these novel circumstances, Radford could reasonably have rejected an interpretation of "duties" that embraced any responsibilities a local fire, police, ambulance or other emergency agency might assign to one of its employees, a reading that would make the scope of the "duties" exception turn on the decisions of such local agencies, even when those decisions undermined the purpose of the statute; and he could reasonably have adopted one that captured only those duties ordinarily associated with first responders when they are "respond[ing] to a request to provide medical or other assistance to a person," responsibilities that might include taking a photo of an injured person or a dead body for a police report or for the medical examiner. *See* Conn. Gen. Stat. § 53-341c; *see also* Conn. Gen. Stat. § 1-2z (permitting consideration of extra-textual evidence of the meaning of a statute where its "plain meaning" would yield "absurd or unworkable results"); Conn. Gen. Assembly, Senate Proceedings, 2011, Vol. 54, Part 6, at 1927 (Remarks of Sen. Coleman)("There are certain justifications for the taking of photographs, whether it be to provide the photograph to police investigators or to provide the photograph to a coroner or medical

examiner.”).

The statute’s listing of the individuals to whom it applies – “peace officer,” “firefighter,” “ambulance driver,” “emergency medical responder,” “emergency medical technician,” and “paramedic” – provides some support for Radford’s apparent interpretation. None of those job titles connotes a person whose duties include publicizing crime and accident scenes on Facebook, least of all when responding to a request for medical or other assistance. Certainly, the term “firefighter” – which the parties appear to agree covered Frischling – carries no suggestion of such public relations duties. For purposes of the statute, a “firefighter” is defined as “any agent of a municipality *whose duty it is to protect life and property* therein as a member of a duly constituted fire department whether professional or volunteer.” Conn. Gen. Stat. § 53a-3(10)(emphasis added). Dictionary definitions of the term “firefighter” likewise focus on the fire-fighting and life-saving duties of the job. Am. Heritage Dictionary of the English Language, 5th Ed. (defining “firefighter” as “[a] member of a fire department who fights fires”); Cambridge Dictionary (defining “firefighter” as “a person whose job it is to stop fires from burning”); Wikipedia (“A firefighter is a first responder trained in public safety and emergency response such as firefighting … respond to emergencies such as hazardous material incidents, medical emergencies, road traffic collisions and other emergencies that threaten life, property and the environment ….”). Neither the statutory definition nor the ordinary sense of the word would have conveyed to Radford that Frischling’s duties as a firefighter who was responding to a request to provide medical or other assistance would have included taking photos of the victim and posting them on Facebook.

To be sure, Frischling’s view of the statute finds some support in Connecticut state court interpretations of the “performance of duties” language in other criminal statutes. “The phrase ‘in the performance of his official duties’ means that the police officer is simply acting within the

scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." *State v. Privitera*, 1 Conn. App. 709, 722 (1984)(internal quotation marks omitted) (construing statute governing interfering with police officer). This language suggests that the employer – here, the Chesterfield Fire Company – defines "the scope" of each first responder's job. Further, as Frischling points out, to the extent that the term "duties" in Section 53-341c is ambiguous, a court would be required to give him the benefit of that ambiguity. *State v. Williams*, 352 Conn. 104, 133 (2025)("Penal laws are generally strictly construed against the State and are not to be read more broadly than their language plainly requires," and under "the rule of lenity," "ambiguities are ordinarily to be resolved in favor of the defendant.").

Radford is not expected to know the rule of lenity or other legal niceties, however, *Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004) (granting qualified immunity in part because police officer was not expected to make "subtle legal distinctions and inferences" necessary for applicable Fourth Amendment analysis), and it was not "obvious" that he was wrong to invoke the statute to arrest a firefighter who took photos, apparently of an accident victim without consent, and posted them on Facebook – even though it fell within his employer-dictated job duties to do so.[5]

As for the photos themselves, the statute is silent as to what constitutes "the image of such a person" and whether, as Frischling appears to suggest, the person for whom medical or other assistance was requested must be identifiable. Here, as noted, the images that were posted were taken at the accident scene and, although pixelated and obscured, can reasonably be construed as

[5] To be clear, I express no opinion about whether Frischling's or Radford's view of the statute is correct. My comments about the statute are aimed solely at showing that enforcing it against Frischling was not so clearly out of bounds as to resemble other situations in which courts have found violations of the law so obvious as to dispense with the need for a similar precedent to deny qualified immunity.

Case: 26-2214, 08/20/2026, DktEntry: 15.1, Page 45 of 50

depicting an accident victim. Again, Radford is not "obvious[ly]" wrong to treat the posting of such images as a statutory violation, and there is no case where "an officer acting under similar circumstances … was held to have violated the Fourth Amendment." *Wesby,* 583 U.S. at 64. Because it is not clearly established that an arrest under these circumstances violates a plaintiff's constitutional rights, Radford is entitled to summary judgment based on qualified immunity. *See e.g., Dorceant v. Aquino*, No. 15CV7103, 2018 WL 3869891, at *4-5 (E.D.N.Y. Aug. 15, 2018) (finding qualified immunity on false arrest claim where "the law regarding [the state law offense of obstructing governmental administration] as applied to the specific circumstances of this case is unclear"; "[i]t is not clear under New York law whether the combination of physical and verbal interference, as they unfolded in this case, would constitute [obstruction of governmental administration]"); *Flores v. Cnty. of Suffolk*, No. 216CV02502, 2018 WL 3966246, at *8 (E.D.N.Y. Aug. 17, 2018) ("As neither party can identify a case where an officer acting under similar circumstances was held to have acted unconstitutionally, the Court cannot conclude that, based on the information available to the Individual Defendants at the time of the arrest, it was [] clearly established that they lacked probable cause.")(internal quotation marks omitted); *Dale v. Kelley*, 908 F. Supp. 125, 137 (W.D.N.Y. 1995), *aff'd*, 95 F.3d 2 (2d Cir. 1996) (defendant officer entitled to qualified immunity where the law was not clearly established "that the type of testimony presented at the hearing in this case would not support an arrest for perjury").

*Arguable Probable Cause*

Even if a defendant violated clearly established law, he still may be entitled to qualified immunity if his actions were objectively reasonable. A defendant is "entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met." *Golino*, 950 F.2d at 870. "The Second Circuit has repeatedly referred to that standard as the arguable probable cause standard, and elaborated that arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Haidon*, 2024 WL 3982880, at *12 (internal quotation marks and citations omitted). Under this analysis, the question is "not whether the officer should have acted as he did." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 107–08 (2d Cir. 2022). "Instead, it is whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that probable cause existed." *Id.* "Indeed, as the Supreme Court has repeatedly recognized, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citation omitted). "Whether a particular officer falls into either of these categories turns on whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks and citation omitted).

For the same reasons that preclude finding the law was clearly established with regard to probable cause for Frischling's arrest, I conclude that officers of reasonable competence could disagree whether a corrected affidavit containing all of the information known to Radford established probable cause. *See Brenden v. Castro*, No. 5:23-CV-539, 2025 WL 2771834, at *4 (N.D.N.Y. Sept. 26, 2025) ("Given the unsettled state of the law, officers of reasonable competence could disagree about whether the probable cause test was met.... Accordingly, there is arguable probable cause, [defendant] is entitled to qualified immunity, and the motion for summary judgment is granted on Plaintiff's false arrest claim."). In other words, it is not clear that "no reasonable officer out of the wide range of reasonable people who enforce the laws in this country,

could have determined that probable cause existed" to arrest Frischling for violating Conn. Gen. Stat. § 53-341c.[6] *Triolo*, 24 F.4th at 108.

## IV. CONCLUSION

For these reasons, Radford's motion for summary judgment (ECF No. 74) as to the § 1983 claims of false arrest (count 1) and malicious prosecution (count 3) is granted, Frischling's motion for partial summary judgment (ECF No. 72) is denied, and Gosselin's motion (ECF No. 71) for summary judgment on the federal failure to intervene claim (count 2), the sole claim remaining against him, is granted. *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) ("[f]ailure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim."). In light of the dismissal of the federal claims, I decline to exercise supplemental jurisdiction over Frischling's state law claims and dismiss those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction).[7] Accordingly, the Town of Montville's motion for summary judgment (ECF No. 76) as to count 10, a state law claim, is denied as moot. *See Sentementes v. Quinn*, No. 21-CV-453, 2022 WL 2834607, at *8 (D. Conn. July 20, 2022) (denying as moot motions for summary judgment on state-law claims where the court granted summary judgment on the only federal claim in the case and declined to exercise supplemental jurisdiction over those state-law claims).

IT IS SO ORDERED.

__________/s/____________
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 1, 2026

---

[6] As a result, I need not reach malice, the other contested element of the malicious prosecution claim.

[7] The Court's subject matter jurisdiction is based solely on federal question jurisdiction under 28 U.S.C. § 1331. See ECF No. 38 ¶4.

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

STEVEN E. FRISCHLING

v. 3:24CV198(MPS)

DAVID RADFORD, II
ALBERT GOSSELIN, III,
TOWN OF MONTVILLE,

# JUDGMENT

This action having come on for consideration of Plaintiff and Defendant's motions for summary judgment before the Honorable Michael P. Shea, United States District Judge, and

The Court having reviewed all of the papers filed in conjunction with the motions and on July 1, 2026, the court entered a Ruling granting Defendant, David Radford, II's motion for summary judgment as to the § 1983 claims of false arrest (count 1) and malicious prosecution (count 3), denying Plaintiff Steven E. Frischling's motion for partial summary judgment, and granting Defendant, Albert Gosselin, III's motion for summary judgment on the federal failure to intervene claim (count 2), the sole claim remaining against him after having entered a ruling on March 7, 2026 dismissing Count 1 as to Albert Gosselin, III. In light of the dismissal of the federal claims, the court declines to exercise supplemental jurisdiction over Steven E. Frischling's state law claims and dismisses those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction). Accordingly, the Town of Montville's motion for summary judgment as to count 10, a state law claim, is denied as moot. It is therefore;

ORDERED, ADJUDGED and DECREED that judgment is entered for the Defendants' DAVID RADFORD, II and ALBERT GOSSELIN, III, against the Plaintiff, STEVEN E. FRISCHLING, all in accordance with the court's Ruling and the case is closed.

Dated at Hartford, Connecticut, this 8th day of July, 2026

Dinah Milton Kinney, Clerk

By /s/ Christina Sichanh
Deputy Clerk

**EOD: 7/8/2026**